IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH M. GRKMAN, JR., *Individually and as*
*the Administrator of the Estate of Joseph M.*
*Grkman, Deceased*,

        Plaintiff,

        v.

890 WEATHERWOOD LANE OPERATING
COMPANY, LLC doing business as THE
REHABILITATION AND NURSING CENTER
AT GREATER PITTSBURG, 890
WEATHERWOOD LANE, LLC doing business
as THE REHABILITATION AND NURSING
CENTER AT GREATER PITTSBURG,

        Defendants.

16cv0519
**ELECTRONICALLY FILED**

### MEMORANDUM OPINION

Before the Court is Defendants' Motion to Dismiss the Plaintiff's survival and wrongful

death case which was originally filed in the Court of Common Pleas of Westmoreland County,

Pennsylvania, but was removed by Defendants who claimed diversity jurisdiction pursuant to 28

U.S.C. § 1332(a)(1). See doc nos. 1 and 6. The gravamen of Defendants' argument in favor of

dismissal is that Plaintiff, acting as his father's (the decedent's) personal representative, signed a

contract with Defendant which contained a binding arbitration clause. Thus, Defendants contend

this case in its entirety must be transferred to arbitration. Doc. no. 7.[1]

Plaintiff's Response in Opposition to the Motion to Dismiss does not dispute that

Plaintiff signed such a contract, and concurs that the contract contained an arbitration clause.

---

[1] Although Defendants' argue for a complete dismissal of this matter in their Motion and Brief in Support
(doc. nos. 6-7), Defendants, in their Reply Brief, argue that, at a minimum, the survival claim should be
severed from the wrongful death claim, and the wrongful death claim should be stayed pending the
outcome of the arbitration of the survival claim.

However, Plaintiff contends that the arbitration clause does not apply to the specific claims raised by his lawsuit.

Both Plaintiff and Defendants have thoroughly briefed this matter and it is now ripe for adjudication. The Court will deny the Motion to Dismiss for the reasons set forth herein.

## I. Standards of Review

### A. Rule 12(b)(1) Motion

A Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges this Court's "very power to hear the case." *See Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007) (Lancaster, J.) (quoting *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). As the party asserting jurisdiction, Plaintiff "bears the burden of showing that its claims are properly before the district court." *Dev. Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995). In reviewing a Motion to Dismiss pursuant to Rule 12(b)(1), this Court must distinguish between facial attacks and factual attacks. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006).

A facial attack challenges the sufficiency of the pleadings, and the Court must accept the Plaintiff's allegations as true. *Id.* A defendant who attacks a complaint on its face "[asserts] that considering the allegations of the complaint as true, and drawing all reasonable inferences in favor of [plaintiff], the allegations of the complaint are insufficient to establish a federal cause of action." *Mullen v. Thompson*, 155 F. Supp. 2d 448, 451 (W.D. Pa. 2001). Dismissal is proper under Rule 12(b)(1) only when "the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or. . . is wholly insubstantial and frivolous." *Kehr*

*Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

When, as in this case, a defendant launches a factual attack on subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Petruska*, 462 F.3d at 302 (quoting *Mortenson*, 549 F.2d at 891). In a factual attack, this Court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings. *See United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

### B. Rule 12(b)(3) Motion

Under 28 U.S.C. § 1391, where jurisdiction is based on diversity of citizenship, a plaintiff may bring a case in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a)(1)–(3). *See also Bockman v. First American Marketing Corp.*, 459 Fed.Appx. 157, 160 (3d Cir. 2012).

A Motion to Dismiss predicated upon Rule 12(b)(3) requires that the "defendant . . . bear the burden of showing improper venue." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724–25 (3d Cir. 1982).

## C.  Rule 12(b)(6) Motion

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading.  Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'"  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief."  *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013).  "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8.  Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements.  *Id.* at 556.

Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

## II. Factual Background

The following facts are accepted as true solely for the purposes of deciding the instant Motion to Dismiss.

Plaintiff's Complaint indicates that Plaintiff's father, Joseph Grkman, Sr. ("Mr. Grkman"), was admitted to Defendants' skilled nursing facility on February 17, 2014. Doc. no. 1-2, ¶ 24. On February 17, 2014, Mr. Grkman possessed a Stage II, 0.5 centimeter ulcer on his coccyx. Id., ¶ 28-29. The Complaint further alleges that Mr. Grkman's ulcer became a Stage III, 2.0 centimeter pressure ulcer within eight days of his admission. Id., ¶ 34-35. Throughout the months of March and April 2014, Mr. Grkman's ulcer worsened, and on May 6, 2014, he was discharged from Defendants' facility. Id., ¶ 36-57. Mr. Grkman died on May 23, 2014. Id., ¶ 58.

Plaintiff's Complaint advances two claims: one is a survival claim and the other is a wrongful death claim. The survival claim alleges that Defendants were negligent in their care for Mr. Grkman – specifically with respect to his ulcer – which led to additional health complications during the months of March, April, and May of 2014, which caused Mr. Grkman to suffer and die. Id., ¶ 59-67. Plaintiff brings the survival cause of action as the administrator of the estate of Mr. Grkman seeking damages for Mr. Grkman's "pain, suffering,

embarrassment . . . and other losses and damages permitted by law." Id. ¶ 68. The wrongful

death claim asserts that due to Defendants' alleged negligent care of Mr. Grkman, Plaintiff (and

others) sustained the following injuries and damages:

> a. They have expended money for funeral and Estate expenses as a result
> of the death of Mr. Grkman;

> b. They have expended money for hospital, nursing, and medical expenses
> necessitated by reason of the injuries causing Mr. Grkman's death;

> c. They have been denied, and have forever lost, the services, assistance,
> guidance, counseling, companionship and society of Mr. Grkman; and,

> d. They have been, and will forever be, deprived of the financial support
> and all pecuniary benefits which they would have received from Mr.
> Grkman.

Id., ¶ 70.

Defendants' Motion asks the Court to dismiss this case in its entirety primarily due to the

fact that Plaintiff, while acting as his father's (Mr. Grkman's) personal representative, signed an

Admission Agreement so that Mr. Grkman could become a resident at Defendant's skilled

nursing facility. See doc. no. 6-1, p. 4-20. The Admission Agreement contains a "dispute

resolution and arbitration" clause which generally indicates that any controversy or dispute

related to Mr. Grkman's care and treatment while a resident/patient at Defendants' facility must

be submitted to binding arbitration. Doc. no. 1-6, p. 19. The specific clause reads as follows:

ARTICLE XIV
DISPUTE RESOLUTION AND ARBITRATION

ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING
TO THIS AGREEMENT AND BROUGHT BY THE RESIDENT,
HIS/HER PERSONAL REPRESENTATIVE, HEIRS, ATTORNEYS OR
THE RESPONSIBLE PARTY SHALL BE  SUBMITTED TO BINDING
ARBITRATION BY A SINGLE ARBITRATOR SELECTED AND
ADMINISTERED PURSUANT TO TH.E COMMERICAL
ARBITRATION RULES OF THE AMERICAN ARBITRATION
ASSOCIATION.  A CLAIM SHALL BE WAIVED AND FOREVER

BARRED IF, ON THE DATE THE DEMAND FOR ARBITRTION IS RECEIVED, THE CLAIM (IF ASSERTED IN A CIVIL ACTION) WOULD BE BARRED BY THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.  ANY CLAIMANT CONTEMPLATED BY THIS PARAGRAPH HEREBY WAIVES ANY AND ALL RIGHTS TO BRING SUCH CLAIM OR CONTROVERSEY [sic.] IN ANY MANNER NOT EXPRESSLY SET FORTH IN THIS PARAGRAPH INCLUDING, BUT NOT LIMITED TO, THE RIGHT TO A JURY TRIAL.

Doc. no. 6-1, p. 19.  Immediately following this clause of the Admission Agreement, Plaintiff signed his initials.

### III. Analysis

Court begins by noting that the law governing the main issue and sub-issues which arise from Defendants' Motion to Dismiss is evolving.  The overarching issue raised by the Motion is: Whether this Court may adjudicate one, both, or neither of the two claims asserted in Plaintiff's Complaint in light of the arbitration clause set forth in the Admission Agreement?

In support of their Motion to Dismiss, Defendants rely on the Federal Arbitration Act ("FAA") and case law emanating from Pennsylvania state courts[2] as well as from the federal courts within the Third Circuit, most notably, *Grbac v. Reading Fair, Co.*, 688 F.2d 215 (3d Cir. 1982).  Doc. no. 7.  Plaintiff's Response to the Motion generally argues that a more recent Pennsylvania Superior Court case, *Pisano v. Extendicare Homes, Inc.,* 77 A.3d 651 (Pa. Super. 2013), *alloc. den.* 624 Pa. 683, 86 A.3d 233 (2014), and its progeny, compels this Court to adjudicate both claims despite the arbitration clause in the Admission Agreement.  Doc. no. 12. Defendants' Reply Brief counters that this case is distinguishable from *Pisano*, and argues that to give effect to the FAA, both claims should be dismissed. Doc. no. 13.   Alternatively, Defendants

---

[2] The substantive law of the Commonwealth of Pennsylvania is applicable to this matter.

argue that even if the wrongful death claim can be tried in this Court, the survival action must be severed to honor the arbitration clause of the Admission Agreement.  Id., p. 4.

### A.  State and Federal Law Governing Wrongful Death and Survival Claims

In *Grbac,* the plaintiff was a widow who had filed a wrongful death action on her own behalf and on behalf of her children.  The plaintiff's husband (Michael Grbac) was killed while driving in a stockcar race in Reading, Pennsylvania.  Prior to entering the race, Mr. Grbac was required to execute a Release Agreement which read in pertinent part that he released Defendant from "all liability to the Undersigned, his personal representative, assigns, heirs, and next of kin for all loss or damages, and any claim . . . on account of injury to person or property or resulting in death of the Undersigned, whether caused by negligence of the [Defendant] or otherwise . . . ." *Id.* at 216.

The District Court granted a summary judgment motion finding that the Release Agreement signed by Mr. Grbac was enforceable.  The plaintiff sought – and was granted – reconsideration so the District Court could consider whether the Release Agreement, as a matter of Pennsylvania law, barred the wrongful death action, which the plaintiff categorized as a separate claim, and one which was not affected by her husband's pre-mortem execution of a Release Agreement.

Upon reconsideration, the District Court concluded the Release Agreement – which was unquestionably valid against the decedent – was likewise valid against the plaintiff-widow's wrongful death claim brought on her own behalf and on the behalf of her children.  The United States Court of Appeals for the Third Circuit concurred with this result noting that a "wrongful death action is purely derivative" such that the cause of action was "satisfied by the release."  *Id.* at 217.

In reaching this conclusion, the Court of Appeals relied upon a Pennsylvania Supreme Court case, *Hill v. Pennsylvania Railroad*, 35 A. 997 (1896), which, although quite old, had not been overruled, and thus, was still valid and controlling law. The Court of Appeals in *Grbac* determined that the *Hill* Court held that a widow did not have a new, independent cause of action, separate and distinct from that her husband who sustained injuries; rather, the *Hill* Court determined the husband had "sole ownership of the cause of action and could either take it to judgment or compromise it." 688 F.2d at 217.

Decades after the Court of Appeals decided *Grbac* (1982), Pennsylvania's Superior Court in *Pisano v. Extendicare Homes, Inc.,* 77 A.3d 651 (Pa. Super. 2013), *alloc. den.* 624 Pa. 683, 86 A.3d 233 (2014), re-examined the *Hill* case under facts similar to those present in the case at bar. In *Pisano,* the decedent's daughter, who possessed power of attorney, executed an Alternative Dispute Resolution Agreement ("ADR Agreement") with the defendant, a long-term care nursing facility on behalf of her father. After her father died, the decedent's son brought an action for wrongful death, and the defendant nursing facility moved to have the case dismissed by arguing that the ADR Agreement barred any such action. *Id.* at 653.

The trial court denied the nursing facility's request to dismiss the case, and the nursing facility took an interlocutory appeal. *Id.* On appeal, the nursing facility argued that the *Hill* case supported its argument that the wrongful death claim was derivative of, and defined by, the decedent's rights. *Id.* at 656.

The Superior Court in *Pisano* disagreed, noting that a wrongful death action was created by state statute. The Superior Court further noted that the *Hill* decision – decided in 1896 – interpreted a wrongful death statute enacted in 1851, and amended in 1855. *Id.* Based upon its review of the 1851/1855 wrongful death statute, the Superior Court acknowledged that a

wrongful death claim was a derivative action controlled by the rights of a decedent. *Id.*
However, the Court also noted that in 1911, the State Legislature amended and re-enacted the
Act, so as to distinguish a wrongful death claim from a survival claim, and importantly, noting
that "the right of action created by this section [pertaining to wrongful death] shall exist <u>only</u> for
the benefit of the spouse, children or parents of the deceased." *Id., citing* 42 Pa.C.S.A. § 8301.
To this end, the Superior Court specifically interpreted this language to mean that "two separate
and distinct causes of action arise from a single injury, one dependent 'on the rights of action
which the decedent possessed at the time of her death,' and the other dependent on 'the rights of
action that the [claimants], as named by statute, possess.'" *Id*. at 656-57, *quoting Holmes v.
Lado*, 412 Pa. Super. 218, 602 A.2d 1389, 1391 n. 2 (1992); *see also Kaczorowski v.
Kalksoinski*, 321 Pa. 438, 184 A. 663, 665 (1936) ("By the statute there is given an explicit and
independent right of action to recover the damages peculiarly suffered by the parties named
therein."); *Matharu v. Muir*, 29 A.3d 375, 383 (Pa. Super. 2011) ("[A] cause of action for
wrongful death is not the deceased's cause of action.").

Further explaining its decision, the Superior Court in *Pisano* discussed the meaning of a
"derivative action," commenting that a "derivative action in tort law . . . refers to the injury from
which the claimant derives a cause of action." *Id.* at 659. The Superior Court concluded that:

> . . . wrongful death actions are derivative of decedents' injuries but are not
> derivative of decedents' rights. This conclusion aligns with the proper use
> of the term "derivative action" and is consistent with the Supreme Court's
> pronouncement in *Kaczorowski*, which explained:
>
>> We have announced the principle that the statutory action is
>> derivative because it has as its basis the same tortious act
>> which would have supported the injured party's own cause
>> of action. Its derivation, however, is from the tortious act,
>> and not from the person of the deceased, so that it comes to
>> the parties named in the statute free from personal

> disabilities arising from the relationship of the injured party
> and tort-feasor.

*Kaczorowski*, 184 A. at 664.

*Id*. at 660.

Recently, the United States District Court for the Middle District of Pennsylvania, when faced with a substantially similar fact pattern as those presented in *Pisano*, and in concurrence with *Pisano,* held that a decedent could not contract away his heirs' wrongful death claim. *Northern Health Facilities v. Batz*, 993 F.Supp.2d 485, 493 (M.D. Pa. 2014). In reaching this conclusion, the *Batz* Court succinctly stated that "the clear message of [*Pisano*] is that a party can only alienate the rights it actually possesses." *Id*. The Court concluded that despite the abundance of pro-arbitration law prevalent in both state and federal courts, the decedent could not contract away the right to a jury trial for a wrongful death claim, because the wrongful death claim was not the decedent's claim to assert; rather, it belonged to decedents' heirs.[3] *Id.* at 496.

---

[3] The District Court in *Batz* also acknowledged that its decision conflicted with the *Grbac* decision. However, the *Batz* Court noted that the *Grbac* decision was predicated upon *Hill,* which in turn, was based upon "two acts of assembly" from the 1800's. After comparing Pennsylvania's current wrongful death statute (42 Pa.C.S.A. § 8301(a)-(b)), against these older acts, the *Batz* Court noted that there was a "shift from vesting statutory rights in the decedent to vesting them in the decedent's statutorily enumerated beneficiaries." *Batz*, 993 F.Supp.2d at 495. Because of this shift in the underlying state substantive law, and in reliance upon the *Erie* Doctrine, the District Court in *Batz* followed Pennsylvania's Superior Court decision in *Pisano*. *Id*., at 495-96.

Support for finding that a "shift" of rights had occurred was noted by the *Batz* Court in *Frey v. Pa. Elec. Co.*, 607 A.2d 796, 798 (Pa. Super. 1992) ("In contrast [to a survival action], wrongful death is not the deceased's cause of action . . . . Wrongful death damages are implemented to compensate the spouse, children, or parents of the deceased for the pecuniary loss they have sustained by the denial of future contributions decedent would have made in his or her lifetime."); *Anthony v. Koppers Co., Inc.*, 436 A.2d 181, 185 (Pa. 1981) ("As distinguished from the wrongful death statutes, the survival statutes do not create a new cause of action; they simply permit a personal representative to enforce a cause of action which had already accrued to the deceased before his death."); *Pezzulli v. D'Ambrosia*, 26 A.2d 659, 661 (Pa. 1942) ("[Survival and wrongful death actions] are entirely dissimilar in nature. The one represents a cause of action unknown to the common law and is for the benefit of certain enumerated relatives of the person killed by another's negligence. The other is not a new cause of action at all, but merely continues in his personal representative the right of action which accrued to the deceased at common law because of the tort"); *see also Tulewicz v. Se. Pa. Transp. Auth.*, 606 A.2d 427, 431 (Pa. 1992) (holding, on the basis

## B. Application of Pennsylvania Substantive Law

The Court notes that the Admission Agreement itself – the contract at issue herein –

states in Article XVII:

> **6. Applicable Law.** This Agreement shall be interpreted according to the laws of the State of Pennsylvania without regard to its conflict of laws.

Doc. no. 6-1, p. 19.

### 1. Whose Rights are Impacted by the Agreement

This Court begins with one of the most basic of contract principles – a party may only

contract away his or her own rights. See *Pisano* and *Batz, supra.*

Here, the language of the arbitration clause found in Article XIV of the Admission

Agreement, indicates that "[a]ny . . . claim arising out of or relating to this agreement and

brought by the resident, his/her personal representative, heirs, attorneys or the responsible

party . . . " must be submitted to binding arbitration "pursuant to the commercial arbitration rules

of the American Arbitration Association." Doc. no. 6-1, p. 16. In this case, the resident is the

decedent-father who agreed to binding arbitration which purports to binds the decedent's

personal representative (in this case, Plaintiff-son) and decedent's heirs (also Plaintiff-son and

possibly others) to an arbitration forum to resolve disputes.

It is uncontested that Plaintiff, the son of the decedent, was the person who signed and

initialed the Admission Agreement where required. The Admission Agreement indicates that

decedent had granted Power of Attorney to his sons – one of which is Plaintiff. Doc. no. 1-6, p.

11. Presumably, it was this Power of Attorney that empowered Plaintiff to sign and initial the

---

of *Pezzulli, supra,* that, because "the two actions are designed to compensate two different categories of claimants," bringing "the two causes of action by one named person, the administrator herein" does not subject "the respective parties to the $250,000.00 aggregate damage limitation cap"); *Keystone Aerial Surveys, Inc. v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 829 A.2d 297, 301–02 (2003) (agreeing with the interpretation that *Tulewicz, supra,* construed the damage limitation cap as a "per-plaintiff" cap," and thereby reaffirming the independence of each claim).

Agreement where required <u>on behalf of his father</u>.   In short, Plaintiff had the power to stand in the shoes of his father and enter into a contract on his father's behalf.

Defendants argue that when he signed this contract on behalf of his deceased father, Plaintiff contracted away not only his father's right to bring a lawsuit, but his own right to do so. Defendants further contend that Plaintiff, as the signatory to this document understood that he was contracting away his own personal right to a jury trial as an heir.  Defendants, in their briefs (see doc nos. 7 and 13), refer to the Admission Agreement as a "tripartite" agreement. Defendants argue that the fact that Plaintiff signed the contract (albeit as his father's agent) distinguishes the instant matter from *Pisano* and *Batz.*

Applying general agency principles,[4] while acting as his father's agent, Plaintiff had the authority to contract away his father's rights to a jury trial for any claim his father owned arising out of or relating to the Agreement – which includes patient care.  The Court finds that those rights which Pennsylvania state substantive law indicates belong to the father can be waived by the father, through his son who was acting as his agent.  This means that the decedent-father, through his agent-son (Plaintiff), could waive the decedent-father's right to a jury trial with respect to a survival claim.

### 2.  The Scope of the Arbitration Clause – What  Rights Does the Decedent "Own" and Freely Contract Away

However, with respect to his own rights, the Court is not persuaded that Plaintiff, by signing and initialing the Admission Agreement, agreed to contract away his own rights to a jury trial for any personal claim that he himself possessed.  There is no indication in this Agreement which clearly explains that Plaintiff, as the "actual" signatory, was waiving not only certain rights of the person for whom he was serving as an agent (*i.e.,* his father), but for himself as well.

---

[4] *See generally* Restatement (Third) of Agency § 101.

Despite Defendants' characterization of the contract as "tripartite," the actual contract belies such a representation. Consequently, this Court finds that because the decedent never possessed the right to waive a jury trial with respect to the claim for wrongful death, he could not contract away the right to a jury trial for a wrongful death claim not even when it was his son who signed the Admission Agreement, because his son was acting as his agent.

At this early juncture of the proceedings, with only the averments found in the Complaint and the content of the Admission Agreement itself for the Court's consideration, this Court finds that even though Plaintiff signed the Agreement – he did so as the decedent's agent and on the decedent's behalf. Therefore, Plaintiff only agreed to waive certain of decedent's rights and not his own. Accordingly, the Court finds that the wrongful death claim filed by Plaintiff is not subject to the binding arbitration clause of the Admission Agreement.

### C. Bifurcating the Survival and Wrongful Death Claims

Now that this Court has concluded that the wrongful death claim is personal to Plaintiff and is not a claim that the decedent, nor Plaintiff as decedent's representative, could contract away, the Court must next consider whether the cause of action for survival should be sent to binding arbitration while the wrongful death claim proceeds before a jury. Once again, this Court is faced with evolving case law, and different outcomes between state and federal cases.

Defendant argues in its Reply Brief (doc. no. 13) that the FAA, 9 U.S.C.A. §1 *et seq.*, and the case law interpreting same control this issue, requiring the survival claim to be severed from the wrongful death claim. This would have the net effect of the survival claim being arbitrated and the wrongful death case being tried in this Court.

On the other hand, Plaintiff contends that another recent Pennsylvania Superior Court Case, *Taylor v. Extendicare Health Facilities, Inc.*, 113 A.3d 317, 324 (Pa. Super. 2015), *alloc.*

*granted*, 122 A.3d 1036 (Pa. 2015), controls this issue, requiring that the two claims not be

severed. Doc. no. 7. Plaintiff further contends that because the party who possesses the right to

litigate the wrongful death case did not waive his right to a jury trial, both claims must be tried in

this Court.

### 1. Comparison of Pennsylvania and Federal Law

The Court begins this part of its analysis by noting that both Pennsylvania state law and

the FAA favor honoring arbitration clauses when they are: (1) valid and (2) applicable to the

claim presented. As recently summarized by the Pennsylvania Superior Court:

> Pennsylvania has a well-established public policy that
> favors arbitration, and this policy aligns with the federal
> approach expressed in the Federal Arbitration Act
> ("FAA"). The fundamental purpose of the [FAA] is to
> relieve the parties from expensive litigation and to help
> ease the current congestion of court calendars. Its passage
> was a congressional declaration of a liberal federal policy
> favoring arbitration agreements.
>
> *Pisano*, 77 A.3d at 661 (citations, quotation marks, and footnote omitted);
> *see also Taylor v. Extendicare Health Facilities, Inc.*, 113 A.3d 317, 324
> (Pa. Super. 2015) ("Pennsylvania has a well-established public policy that
> favors arbitration, and this policy aligns with the federal approach
> expressed in the FAA"); petition for allowance of appeal granted on other
> grounds, __ Pa.__, 122 A.3d 1036 (2015).

*MacPherson v. Magee Memorial Hospital for Convalescence*, 128 A.3d. 1209, 1219 (Pa. Super.

2015).

Similarly, the Court of Appeals for the Third Circuit has held that the FAA provides the

"body of federal substantive law establishing and governing the duty to honor agreements to

arbitrate disputes" and expresses a "strong federal policy in favor of resolving disputes through

arbitration." *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 522

(3d Cir. 2009). Like Pennsylvania's body of arbitration law, compelling arbitration under the

FAA is "strictly a matter of contract." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). "If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Id.*, s*ee also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, (1960) (Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so.). "Thus, in deciding whether a party may be compelled to arbitrate under the FAA, we first consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (*quoting Century Indem. Co.*, 584 F.3d at 527).

Although both Pennsylvania state case law and the FAA favor arbitration when: (1) the arbitration clause/agreement is valid, and (2) the dispute falls within the scope of that clause/agreement – this is where the synergy between state and federal law comes to an end.

## 2. Pennsylvania Law – Disallows Bifurcation of Claims

In *Taylor,* the Superior Court of Pennsylvania considered the following facts: The decedent, Anna Taylor, was admitted to the defendant's skilled nursing facility. 113 A.3d at 319. The decedent died from a pressure ulcer and the co-executors of her estate (the plaintiffs) brought survival and wrongful death claims claiming that the defendant's negligence with respect to Anna's ulcer caused or contributed to her death. *Id.* Upon Anna's death, her co-executors filed a complaint in Pennsylvania state court asserting wrongful death and survival claims. *Id.* The defendant filed preliminary objections to the plaintiffs' complaint averring that one of the plaintiff-co-executors, on Anna's behalf, had executed a binding arbitration agreement which foreclosed the plaintiffs' rights to sue for her alleged negligent care. *Id.* at 319-20.

The trial court, relying upon *Pisano, supra,* held that the arbitration agreement did not apply to the wrongful death claim beneficiaries. *Id.* at 320. However, the trial court also held that the survival claim could not be severed from the wrongful death claim. *Id.* The trial court overruled the defendant's preliminary objections and refused to sever the arbitable survival claim from the non-arbitable wrongful death claim, ordering both claims to be tried in court. *Id.*

On appeal, the Superior Court held that an arbitration agreement will not preclude consolidation of an arbitable claim with a non-arbitable claim. *Id.* at 322. In reaching this decision, the Superior Court relied upon Pa.R.Civ.P. 213(a), and to some extent, Pa.R.Civ.P. 1020(d)(1).[5] *Id.* The Superior Court also relied upon Pennsylvania's wrongful death statute, which the Court interpreted as mandating consolidation of the two claims:

> (a) General rule.—An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime **and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery**.

> 42 Pa.C.S. § 8301(a) (emphasis added). We find both [Pa.R.Civ.P. 213(a)] and the statute applicable.

---

[5] The Superior Court explained that Pa.R.Civ.P. 1020(d)(1) provides for mandatory joinder of all causes of action against the same person arising from the same transaction or occurrence to avoid waiver. *See Taylor*, 113 A.3d at 322, n.4. The relevant portion of Rule 213 reads, "[a] cause of action for the wrongful death of a decedent and a cause of action for the injuries of the decedent which survives his or her death may be enforced in a single action, but if independent actions are commenced they shall be consolidated for trial." Pa.R.Civ.P. 213(e). The Superior Court further noted, "the basis for both [Pa.R.Civ.P.] Rule 213 and Rule 1020 'is the avoidance of multiple trials and proceedings involving common facts or issues arising from the same transaction or occurrence. The avoidance of duplication of effort is a benefit to both the parties and the courts.'" *Taylor*, 113 A.3d at 322, n.4., *citing*, 1990 Explanatory Comments to Pa.R.Civ.P. 213.

*Id.* Interpreting this statute the Superior Court specifically held, "[t]he statute focuses on the consolidation of wrongful death and survival claims as a means to avoid inconsistent verdicts and duplicative damages in overlapping claims." Id. at 325. The *Taylor* court reiterated this interpretation in the same opinion stating, "Pennsylvania's wrongful death statute requires that wrongful death and survival actions be consolidated." *Id.* at 326.

The *Taylor* court also considered the defendants' argument that the FAA pre-empted the Pennsylvania Rules of Civil Procedure and Pennsylvania's wrongful death statute. *Id.* at 322. The defendants relied upon case law from the United States Supreme Court as well as Pennsylvania's Supreme Court in arguing their position. *See Marmet Health Care Center, Inc. v. Brown*, __U.S. __, 132 S.Ct. 1201, 1203-04 (2012) ("West Virginia's prohibition against predispute agreements to arbitrate personal injury or wrongful death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."); and *Moscatiello v. Hilliard*, 939 A.2d 325, 326, (Pa. 2007), (Pennsylvania's thirty-day time limit for challenging arbitration awards was not pre-empted by the three-month FAA time limit in 9 U.S.C. § 12, as it did not undermine the goal of the latter statute).

Disagreeing with the defendants' preemption argument, the Superior Court held that FAA did not expressly preempt Pennsylvania's Rule 213, and further found Congress did not intend for the FAA to occupy the field of arbitration. *Taylor,* 113 A.3d at 323. Considering whether "conflict preemption" – when a federal law and state law conflict in such a way that compliance with both is impossible or when a state's law stands as an obstacle to the execution and full

objective of Congress – applied to its case, the Superior Court still found no such preemption. *Id.* at 324-25. In addition, the *Taylor* Court found the United States Supreme Court decision in *Marmet* to be distinguishable noting that "[n]either Pa.R.C.P. 213 nor 42 Pa.C.S. § 8301 prohibits the arbitration of wrongful death and survival claims[,]" and thus, Pennsylvania law did not "mirror the categorical prohibition of arbitration of wrongful death and survival actions that the *Marmet* Court viewed as a clear conflict between federal and state law." *Id.* at 325.

Ultimately, the court in *Taylor* concluded: (1) the wrongful death and survival claims could not be severed pursuant to Pennsylvania's statutory law and its rules of civil procedure; (2) the FAA did not preempt Pennsylvania's statute or rules of procedure; and (3) despite the arbitration agreement, both claims would be tried in court.[6]

### 3. Federal Law – Bifurcation of Claims Permissible

Turning to the federal courts, the United States District Courts for the Middle, Western, and Eastern Districts of Pennsylvania have all encountered cases where a nursing home or skilled nursing facility executed an arbitration agreement with the decedent or the decedent's agent/personal representative, and have decided to sever the decedent's survival claims from the heirs' wrongful death claims. *See, i.e., Batz,* 993 F.Supp.2d at 496-97 (severing the survival and wrongful death claims in reliance upon *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,*

---

[6] The Court recognizes that as of this writing, the Supreme Court of Pennsylvania granted Extendicare's Petition for Allowance of Appeal of the Superior Court's decision in *Taylor,* heard oral argument on April 5, 2016, but has not yet issued its decision. *See Taylor v. Extendicare Health Facilities, Inc.,* 122 A.2d 1036 (Pa. 2015). The two issues presented to and argued before the state's Supreme Court were framed as: (1) Does the Superior Court's decision, which refused to compel arbitration of the arbitrable survival claim, violate the Federal Arbitration Act requirement that arbitration agreements "shall be valid, irrevocable and enforceable save upon grounds as exist at law or in equity for the revocation of any contract?" and (2) Does the Superior Court's conclusion that the Pennsylvania Rules of Civil Procedure, Rule 213(e), require the consolidation of the otherwise arbitrable survival action with the non-arbitrable wrongful death action on grounds of efficiency violate the Federal Arbitration Act as it has been interpreted by the United States Supreme Court which has consistently ruled that arbitration is required when there is an agreement to arbitrate even when compelling arbitration results in duplication and piecemeal litigation? *Id.*

460 U.S. 1, 20 (1983) (the FAA "requires piecemeal resolution when necessary to give effect to an arbitration agreement.")); *Golden Gate Nat'l Senior Care, LLC v. Sulpizo*, 2016 WL 1271333, *9 (M.D. Pa., decided March 31, 2016) (severing the claims in accordance with the FAA where the arbitration agreement explicitly called for application of the FAA to its interpretation and enforcement); *Hartman v. Sabor Healthcare Group*, 2015 WL 5569148, *9 (M.D. Pa., decided Sept. 21, 2015) (acknowledging that Pennsylvania appellate courts in *Taylor* and *Tuomi* held that the FAA did not preempt Pennsylvania Rule 213, but finding that federal courts are not bound by a state court's interpretation of the FAA relying upon *United States v. Bedford*, 519 F.2d 650, 654 n. 3 (3d Cir. 1975) ("It is a recognized principle that a federal court is not bound by a state court's interpretation of federal laws . . . .")); *Erie Operating, LLC v. Foster*, 2015 WL 5883658 *9 (W.D. Pa. decided, Oct. 15, 2015) (acknowledging split in authority as to whether the FAA preempts Rule 213, but concluding that wrongful death and survival claims should be severed); *Golden Gate Nat'l Senior Care, LLC v. Beavens*, 123 F.Supp.3d 619, 635-36 (E.D. Pa. 2015) ("Rule 213 is an expression of the Commonwealth's interests in the streamlined resolution of survival and wrongful death claims, but this policy must give way to the FAA's overriding goal to ensure judicial enforcement of privately made agreements to arbitrate.") (internal quotes and citation omitted).

### 4. Application of the Law

None of the case law emanating from the federal District Courts of Pennsylvania is binding on this Court, but it is instructive. Despite the glaring difference between what a Pennsylvania state court would do – not sever the survival and wrongful death claims – and what the federal District Courts seated in Pennsylvania have done – sever the claims – this Court has noted that most of the federal cases which find that the FAA (and federal case law) require

bifurcation of the wrongful death and survival claims, have had fact patterns where the courts noted that the contract (or the arbitration) clause specifically invoked the FAA, and/or there was little or no discussion as to the choice of law provision found in the contract.  However, most courts, whether federal or state, first consider what law the contract indicates should apply to its terms.

Turning to the instant matter, the arbitration clause found in Article XIV of the Admission Agreement reads that the "claim . . . shall be submitted to binding arbitration . . . and administered pursuant to the commercial arbitration rules of the American Arbitration Association."  Doc. no. 6-1, p. 16.  However, section "6" of Article XVII, reads in pertinent part: "This Agreement shall be interpreted according to the laws of the State of Pennsylvania without regard to its conflict of laws."

The interpretation of a contract is a question of law.  When the language of the contract is clear and unambiguous, a court is required to give effect to that language.  *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. 1993) (citing *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982)).  A contract will be deemed "ambiguous" if:

> . . . and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.

*Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 93 (3d Cir. 2001).

Any ambiguous language in a contract must be construed against the drafter and in favor of the other party if the latter's interpretation is reasonable.  Restatement (Second) of Contracts § 206.

Defendants' Brief contends that the FAA governs the Admission Agreement requiring that both of Plaintiff's claims be submitted to binding arbitration. Doc. no. 7 p. 4-8. Notably, Defendants do not cite to the Arbitration Agreement as support for their argument that Plaintiff and Defendants agreed to arbitrate their disputes. Rather, Defendants rely upon the content of various sections of the FAA (and case law interpreting same), to support their contention that Plaintiff knowingly agreed to waive his decedent-father's rights (as well as his own rights) to a jury trial. In sum, Defendants argue that given the "nature" of the contract and the fact that the contract contains an arbitration clause, the FAA applies thereby requiring both claims to be arbitrated; or, at a minimum, the survival claim to be arbitrated after is it severed from the wrongful death claim. See doc. no. 13.

This Court finds that the instant contract clearly contains a choice of law clause whereby it is indicated that the Admission Agreement is to be "interpreted according to the laws of the State of Pennsylvania without regard to its conflict of laws." The arbitration clause is part and parcel of this Admission Agreement, and thus, Pennsylvania law unequivocally applies to the contract at issue. The Court further finds that because Pennsylvania law controls how the terms of the contract are to be interpreted, any ambiguity must be decided against the drafter – in this case, Defendants.

It is inarguable that Pennsylvania case law – at least in its current state – has clearly held that wrongful death claims and survival claims cannot be severed from another. It is also true that the wrongful death statute, which has formed the basis for the Pennsylvania state court's decision to decline to sever a wrongful death claim from a survival claim, does not categorically prohibit arbitration of wrongful death claims thereby triggering preemption under the FAA.

Even though Pennsylvania law – like the federal law – gives great deference to those individuals who wish to arbitrate claims for which they possess the right to arbitrate, under the circumstances presented here (which are nearly identical to those in *Taylor*), the two claims at issue cannot be severed. Although the United States Supreme Court has continuously reinforced the "liberal federal policy favoring arbitration agreements," *Moses*, 460 U.S. at 24, (1983), it has at the same time recognized that courts applying the FAA have a limited but important threshold role to play when a litigant moves to compel arbitration. When a party challenges the validity of an arbitration agreement by contending that one or more of its terms is unconscionable under generally applicable state contract law, a question of arbitrability is presented. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA].").

Because decedent (through Plaintiff as his agent) only possessed the right to waive a jury trial with respect to his survival claim, Plaintiff retained the right to a jury trial with respect to the wrongful death claim. Under Pennsylvania law, the survival claim which could have been arbitrated, cannot be severed from the wrongful death claim which cannot be arbitrated, considering the facts presented here. Thus, the Court finds that because the contract itself mandates the application of Pennsylvania law, and because Pennsylvania substantive law precludes severance of a survival claim from a wrongful death claim (*see* 42 Pa.C.S. § 8301(a) and case law interpreting same, *supra.*), this Court concludes that both claims must be tried before a jury.[7]

---

[7] The Court acknowledges – as Defendants noted – that Judge Rothstein reached the opposite conclusion concerning claim severance in *Skywark v. Healthbridge Management LLC*, case no. 1:15-cv-00058-BR. (finding that a valid arbitration clause existed and bifurcated the matter to compel arbitration of survival

In sum, given the language set forth in this Admission Agreement which is to be interpreted in accordance with Pennsylvania law, the Court will not bifurcate the wrongful death and survival claims. Both causes of action will be tried here in accordance with Pennsylvania state law and in an effort to avoid inconsistent results.

**IV. Conclusion**

Based on the forgoing law and authority, Defendants' Motion to Dismiss will be DENIED. An appropriate order shall follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF registered counsel of record

---

claim). However, this Court notes that her Opinion did not discuss the application of the choice of law provision contained in the parties' contract.

Furthermore, severance of the survival and wrongful death claims could lead to inconsistent liability and causation determinations. For example, if the survival claim proceeds first (as suggested by Defendants in their Reply Brief), the arbitrator could determine that Defendants were not negligent with respect to the decedent-father's care (or s/he could find negligence, but then find causation lacking), thereby terminating the survival claim in Defendants' favor. The wrongful death action – assuming it were to proceed, despite this determination – could result in a jury finding that Defendants were negligent and that the negligence caused the decedent-father's death, resulting in an award for Plaintiff.